IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHIRLEY SHADUR**, *Plaintiff,* v. **TEVA PHARMACEUTICALS USA, INC.**, *Defendant* | **Case No. 2:19-cv-01665-JDW** |

## MEMORANDUM

Not every unpleasant encounter with a boss constitutes discrimination. Sometimes, a boss has bad interpersonal skills. Other times, he just doesn't get along with a subordinate. Shirley Shadur did not like her boss at Teva Pharmaceuticals USA, Inc. She believes he treated her badly because she is Israeli and speaks English with an accent. She also thinks that Teva fired her because she complained about her boss. While the record demonstrates that she had a contentious relationship with her boss for her final 18 months at the company, it does not reveal discrimination or retaliation. The record does raise the possibility that Teva interfered with Ms. Shadur's rights under the Family and Medical Leave Act, though, so a jury will have to resolve Ms. Shadur's FMLA claim.

**I.  FACTS**

    **A.  Ms. Shadur's Job Performance**

Ms. Shadur was born in Israel, and Hebrew is her first language. Teva hired Ms. Shadur in July 2015 as a Manager in its marketing department. In her position, Ms. Shadur managed marketing efforts tor Teva products. Her job required competency in communication, including

"sound written and oral communication skills as well as the ability to present ideas articulately." (ECF No. 17-8.) Ms. Shadur reported to Timothy McFadden, the President of Strategic Marketing. Beginning in 2017, Mr. McFadden worked in a different office from Ms. Shadur.

In a performance review for 2016, Mr. McFadden gave Ms. Shadur an overall rating of "Successful Performance." (ECF No. 17-3 at 9.[1]) Under the heading "Main Areas for Development," Mr. McFadden said, "Communication:  improving her command of English, especially in written documents like e-mails and presentations." (*Id.*) According to Mr. McFadden, his main concern was Ms. Shadur's preparation of slide decks, which was part of her job. Ms. Shadur received pay raises each year she worked at Teva. Ms. Shadur agreed that communication was an area in which she had room for growth, especially communication with top management. But Mr. McFadden's comments about improvement of communications offended Ms. Shadur. The 2016 performance review was the only time that Mr. McFadden made negative comments about Ms. Shadur's communication skills, and Ms. Shadur cannot identify any other comments that he made that she thinks were discriminatory. However, she says that, at times, he rolled his eyes when she spoke. And, on one occasion, he told her that she could improve by speaking English in a "more American way." (ECF No. 17-2 at 73.)

**B.     Ms. Shadur's Trip to Israel**

In April 2017, Ms. Shadur asked Mr. McFadden if she could take 28 days of paid time off so she could visit her father in Israel because he was dying. She did not have that much PTO available, so she also proposed various flexible work assignments. Mr. McFadden relayed Ms. Shadur's request to HR. Ms. Shadur contacted Jessica Graybill in HR about her options. Ms.

---

[1] Both parties have lumped together several documents as exhibits and made the Court's job much more difficult as a result. The Court will refer to the page assigned by the ECF system for clarity. In the future, the parties should submit separate documents as separate exhibits.

Shadur claims that Ms. Graybill "did not offer FMLA leave as an option," but that she knew that FMLA leave was available to her. (*Id.* at 163; *see also* ECF No. 19-1 at ¶¶ 35, 37.) Ms. Shadur did not apply for FMLA leave. Instead, she shortened her trip and took 11 days of PTO.

### C. Ms. Shadur's Harassment Complaints

In September 2017, Ms. Shadur and Mr. McFadden had a disagreement during a call. Ms. Shadur contends that Mr. McFadden raised his voice, but she does not remember what he said. Ms. Shadur believed that Mr. McFadden treated her the way that he did because she was Israeli, so she complained to HR. Ms. Graybill investigated but concluded that Ms. Shadur could not provide specific examples of discrimination. Ms. Graybill set up a meeting to facilitate more open communication between Ms. Shadur and Ms. Graybill. At Ms. Graybill's suggestion, Ms. Shadur and Mr. McFadden began having regular one-on-one meetings.

In early 2018, Mr. McFadden gave Ms. Shadur a favorable performance review for 2017. In the review, he noted that she should "strive to . . . advance her written and oral communication skills . . .." (ECF No. 17-3 at 21.) In February 2018, Mr. McFadden gave Ms. Shadur feedback on two presentations on which she was working and, in an email, asked her to take control of one project. Ms. Shadur disagreed with the feedback and objected to Mr. McFadden directing her via email, rather than a phone call, to take control of a project.

On February 28, 2018, Ms. Shadur contacted Maureen Cavanaugh in HR to ask if she could work elsewhere in the same division. Ms. Cavanaugh told Ms. Shadur that there were no open positions but that if Ms. Shadur found a position, Teva would support her effort to move. Ms. Shadur did not make an allegation of discrimination during that call.

On March 8, 2018, Ms. Shadur complained to Maureen Field in the HR department about Mr. McFadden. Ms. Field told Ms. Graybill about Ms. Shadur's complaint. Tara Flagg of HR then

3

suggested to Ms. Field that Ms. Field connect with Ms. Graybill because Ms. Shadur "is not new to HR . . .." (ECF No. 19-4 at 12.) On March 21, 2018, Ms. Field asked Ms. Flagg to take over the investigation. Ms. Flagg agreed and said "I will not spend a ton of time on this investigation. This behavior is not new, the allegations are not new, this has been investigated several times over." (*Id.* at 4.) Ms. Field responded that the "only new piece is the claim of discriminating because of her national origin. Per my conversation with [Mr. McFadden] I found that to be unsubstantiated." (*Id.* at 3.) Ms. Flagg's response was, "You can't make this stuff up!" (*Id.* at 16.)

HR did conduct an investigation of Ms. Shadur's complaint. As part of that investigation, on March 16, 2018, Ms. Shadur sent Ms. Field a memo outlining her complaints. In response, Ms. Field told Ms. Shadur to continue working while the investigation continued. Ms. Shadur told Ms. Field that she intended to "remain at home while I wait to hear from you." (ECF No. 17-6 at 8.) Ms. Shadur then stopped responding to emails because she thought she was on a leave of absence.

Over the next several weeks, Ms. Field and Mr. McFadden told Ms. Shadur that she should return to work. She did not. On March 28, 2018, Ms. Field met with Ms. Shadur. During that meeting, Ms. Field encouraged Ms. Shadur to look for a different position internally. Ms. Field also said that the investigation was nearly complete and asked Ms. Shadur for any additional information. Ms. Shadur sent Ms. Field an email on April 1, 2018, outlining frustrations with Mr. McFadden. Ms. Field concluded that there was no evidence of discrimination.

On April 2, 2018, Ms. Field proposed a meeting to include Ms. Field, Ms. Shadur, Ms. Cavanaugh, and Mr. McFadden. Ms. Shadur responded by email and said,

> As I stated few times in our previous meetings I have no intention to meet with [Mr. McFadden] to 'talk through everything' as I feel the relationship is irreparable. I'm more than happy to meet with you and Maureen C. as long as the meeting goal is not to try to help [Mr. McFadden] and me to go back to work together. The working environment [Mr. McFadden] created is unbearable and I feel I provided Teva sufficient time and information to support

4

> my claim. . . . If Teva concluded its investigation and has no other solution for me, the only option left for me is to leave Teva. If this is the case, I would appreciate if Teva will be willing to view it as a layoff. I also would appreciate if we can conclude this issue by the end of this week, one way or the other.

(ECF No. 13 (the "April 2 Email").) Ms. Field reviewed Ms. Shadur's email with Teva's in-house attorney and concluded that the company could treat Ms. Shadur's resignation as a layoff, though she would not be eligible for severance.

Ms. Field did not get back to Ms. Shadur for eight days. In the meantime, on April 8, 2018, Ms. Shadur emailed Ms. Field and asked for an update. Ms. Shadur also discussed two potential positions to which she might be able to transfer at Teva. On April 10, 2018, Ms. Field responded and said, "Although I was hoping for a different outcome and further conversations with [Ms. Cavanaugh and Mr. McFadden] it is your decision[] whether or not to have that conversation or as you mentioned in your email resign from the organization." (ECF No. 19-4 at 94.) Ms. Field also reported that she did not have any additional information about the other positions that Ms. Shadur had mentioned. Ms. Field explained that because Teva had accepted Ms. Shadur's resignation, Ms. Shadur should not enter company property. Later that night, Ms. Shadur objected and said that she did not resign.

### D.     Procedural History

Ms. Shadur filed this action on April 17, 2019. In an Amended Complaint, she asserts claims under Title VII and the Pennsylvania Human Relations Act for discrimination on the basis of race and national origin and for retaliation. She also asserts a claim for interference with her rights under the FMLA. Teva has moved for summary judgment on all claims. In her opposition, Ms. Shadur withdrew her race discrimination claims.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *See Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### A. Preliminary Matters

#### 1. Hostile work environment

Teva devotes several pages of its brief to challenging Ms. Shadur's hostile work environment claim. Although the Amended Complaint references a "hostile work environment" in one heading, it does not assert that any conduct was severe and pervasive. Nor does it include any language in any count to suggest that Ms. Shadur is asserting a hostile work environment claim. In addition, Ms. Shadur did not respond to Teva's arguments about a hostile work

environment. Given that Ms. Shadur's counsel is an experienced employment discrimination lawyer, the Court assumes these choices were purposeful. The Court therefore concludes that Ms. Shadur has not asserted a hostile work environment claim in this case. Because those claims are not in the case, the Court has no basis to enter summary judgment on them.

### 2. Ms. Shadur's resignation

Teva argues that Ms. Shadur did not suffer an adverse employment action because she resigned when she sent the April 2 Email. The Court concludes that factual questions prevent that conclusion. Teva did not respond to Ms. Shadur's email for eight days. During that time, Teva continued to treat Ms. Shadur like an employee (though a disaffected one, to be sure). It did not cut off her access to computer networks, instruct her to stay away from the building, or remove her from payroll. While Teva was thinking about how to respond, Ms. Shadur sent an email asking about other positions internally. That email suggests that Ms. Shadur also thought that her future was at Teva, not that the relationship had fractured. Finally, the April 2 Email uses conditional language: "if Teva . . . has no other solution for me." (ECF No. 17-13.) Taken together, a reasonable factfinder could conclude that Ms. Shadur did not resign, but that Teva terminated her on April 10, 2018.

### B. Title VII/PHRA Claims

The three-step burden-shifting *McDonnell Douglas* framework governs Ms. Shadur's discrimination and retaliation claims. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 425-26 (3d Cir. 2013) (discrimination); *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (retaliation). Under that framework, an employee must establish a *prima facie* case of discrimination, the employer has a burden of production (but not persuasion) to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *See Storey v. Burns Int'l*

*Sec. Servs.*, 390 F.3d 760, 764 n. 11 (3d Cir.2004). If the employer articulates such a reason, the employee must then proffer evidence to allow a reasonable factfinder to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual. *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir.2003) (*per curiam*). To do so, she must point to "some evidence, direct or circumstantial, from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### 1. Discrimination

To state a *prima facie* case of discrimination, a plaintiff must show (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 2014). Teva does not challenge the first two elements, and the Court has concluded that Ms. Shadur has evidence that she suffered an adverse employment action when Teva terminated her.

Ms. Shadur has no evidence that Teva's termination of her occurred under circumstances giving rise to an inference of discrimination. First, Ms. Shadur has not demonstrated that Mr. McFadden or anyone else discriminated against her. Ms. Shadur points to two specific comments that Mr. McFadden made about her English—one in her 2016 performance review and a comment that she should speak in a more "American" way. Several cases have held that comments in a performance evaluation encouraging an employee to improve her English do not demonstrate discrimination. *See, e.g., Amro v. Boeing Co.*, No. 97-3049, 1998 WL 380510 at *2 n.3 (10th Cir. 1998); *Ang v. Proctor & Gamble Co.*, 923 F.3d 540, 549-50 (6th Cir. 1991). Mr. McFadden's

8

comment about speaking in a more American way, though not in a formal evaluation, is the same type of constructive feedback.

Ms. Shadur also points to Mr. McFadden's alleged "eye rolls" as evidence of discrimination. But Ms. Shadur offers no evidence other than her subjective belief to tie those eye rolls to her accent or her national origin more generally. She offers no evidence of a correlation between the eye rolls and her speech, let alone evidence suggesting some causal link between the two. The summary judgment standard does not require the Court to assume that Mr. McFadden's eye rolls evidence discrimination just because Ms. Shadur thinks they do, and the Court will not make such an assumption.

Even if Ms. Shadur had some evidence of discrimination, she still cannot establish a causal link between that discrimination and her termination. She was not fired close in time either to the 2016 performance review or the comment about speaking in an American way. Mr. McFadden—the only person alleged to harbor an anti-Israeli bias—was not involved in her termination. *See Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997) (comments by non-decisionmakers do not support inference of discrimination). Ms. Shadur has no evidence that Teva treated similarly situated employees better or different from her. And, it was Ms. Shadur's April 2 Email that prompted her termination. Because Ms. Shadur cannot show that her termination occurred under circumstances giving rise to an inference of discrimination, she cannot show a *prima facie* case.

### 2. Retaliation

A *prima facie* retaliation claim requires plaintiff to demonstrate that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the participation in the protected activity and the adverse action. *Id.* "An

9

employee may establish a causal nexus if he shows 'unusually suggestive' temporal proximity between the two events." *Holt v. Pennsylvania*, 683 F. App'x 151, 157 (3d Cir. 2017) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). "[W]hen temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may [also] look to the intervening period for other evidence of retaliatory animus." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (internal citations omitted)). Circumstantial evidence of retaliatory animus may include a pattern of ongoing antagonism, inconsistencies in the employer's justifications, or any other "evidence gleaned from the record as a whole" that is sufficient to support an inference of retaliatory animus. *Id.*

Teva does not dispute that Ms. Shadur engaged in protected activity. As discussed above, Ms. Shadur has demonstrated that disputed issues of fact exist as to whether she suffered an adverse employment action. Factual issues also exist about whether a causal connection exists. On April 1, 2018, Ms. Shadur summarized her complaints about Mr. McFadden. The next day, in the April 2 Email, she complained about her work environment. By April 4, 2018, Teva's internal consensus was to treat the April 2 Email as a resignation. A jury might agree that it was. But a jury might also conclude that Teva twisted the April 2 Email in order to rid itself of Ms. Shadur as a result of her complaints about Mr. McFadden.

Although Ms. Shadur has enough evidence of her *prima facie* case, she still cannot succeed. Teva has articulated a legitimate, nondiscriminatory reason for Ms. Shadur's termination: Teva thought she resigned. Ms. Shadur has no evidence that Teva's explanation is a pretext under either *Fuentes* factor. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)(holding that to demonstrate that an employer's reasons are pretextual, the plaintiff must point to evidence from which a factfinder could either (1) disbelieve the articulated legitimate reasons or (2) believe that a

discriminatory reason was more likely than not a motivating or determinative cause of the adverse action.)

First, Ms. Shadur argues that a factfinder might disbelieve Teva's articulated reason because the April 2 Email was equivocal. The Court disagrees. From the time of Ms. Shadur's email, Teva's internal documents demonstrate that its employees thought Ms. Shadur resigned. Nothing in the record undermines that explanation or calls it into question. And, while there might be factual disputes about whether she did, in fact, resign, there is no dispute that Teva thought she did.

The record also does not suggest that Teva's decision was motivated by a retaliatory motive. Ms. Shadur points to the emails within the HR department about Ms. Shadur's complaint. Those emails show that employees in the HR department were unimpressed by Ms. Shadur's complaint. Those same employees thought that the prior investigation addressed Ms. Shadur's complaint. But nothing about those emails suggests that the employees considered Ms. Shadur a particular problem or that they harbored animus towards her. Ms. Shadur reaches that conclusion only after several unsupported logical leaps that the Court will not make.

Ms. Shadur also claims that Teva's refusal to engage with her she disputed her resignation demonstrates that Teva wanted to terminate her "no matter what." (ECF No. 19 at 19.) But even if one made that logical leap, it does not lead to a finding of retaliation or animus. It leads to a conclusion that the employees in question wanted to be done with the dispute and recognized that further discussions would muddy the waters. That does not demonstrate pretext.

### C. FMLA Interference

The FMLA creates a cause of action for interference with the rights it bestows. *See* 29 U.S.C. § 2615(a)(1). To establish a claim for interference based on a failure to inform her of her

11

FMLA rights, a plaintiff must show that (1) she was an eligible employee, (2) the FMLA applied to the employer, (3) the plaintiff was entitled to FMLA leave, (4) the plaintiff gave notice of her intent to take FMLA leave, and (5) the plaintiff was denied benefits to which she was entitled under the FMLA. *See Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014).

Ms. Shadur has offered evidence that she gave notice of her intent to take FMLA leave. The "critical test is not whether the employee gave every necessary detail to determine if the FMLA applies, but how the information conveyed to the employer is reasonably interpreted." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012) (quote omitted). Ms. Shadur told Mr. McFadden that she wanted to go to Israel because her father was dying. That information would reasonably be interpreted as suggesting that Ms. Shadur was going to care for a sick relative. Thus, Teva was aware that Ms. Shadur was not going to Israel for vacation or a family visit. She was going for a reason that the FMLA protected.

In addition, Ms. Shadur was denied a benefit and suffered harm as a result. When an employer's failure to inform an employee about the right to FMLA leave "rendered h[er] unable to exercise [the right to leave] in a meaningful way, it denies her a benefit. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir.2004). Teva claims that Ms. Graybill told Ms. Shadur that she could take FMLA leave. Ms. Shadur seems to dispute that. In one paragraph of her response to the Statement of Undisputed Material Facts, Ms. Shadur admits that Ms. Graybill told her about FMLA leave. Two paragraphs later, Ms. Shadur denies it. (*Compare* ECF No. 19-1 at ¶¶ 35, 37.)  The Court will assume that Ms. Shadur's disputes Teva's account and will resolve that dispute in Ms. Shadur's favor.

Ms. Shadur also suffered prejudice from Teva's failure. The record is undisputed that, after asking for 28 days of leave, Ms. Shadur shortened her trip and only took 11 days of PTO. An

12

employee can show prejudice by showing that she would have structured her leave differently if she had known about her right to FMLA leave. *See Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318-19 (3d Cir. 2014). Ms. Shadur therefore has evidence sufficient to present her FMLA interference claim to a jury.

## IV. CONCLUSION

Ms. Shadur has evidence that Teva misinterpreted her April 2 Email. But she has no evidence that its misinterpretation was a product of discrimination or retaliation. The Court will therefore grant summary judgment on the claims under Title VII and the PHRA. Ms. Shadur does have evidence from which a factfinder could conclude that Teva interfered with her FMLA rights, so the Court will deny summary judgment on that count. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

July 23, 2020